**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
(WESTERN DIVISION, CINCINNATI)**

| | | |
|---|---|---|
| ROBERT W. BLACK, | : | |
| Plaintiff, | : | Civil Action No.1:11-cv-210 |
| -v.- | : | Judge |
| CINCINNATI FINANCIAL CORPORATION, | | |
| JOHN J. SCHIFF, JR., THOMAS R. SCHIFF, | : | Magistrate Judge |
| WILLIAM F. BAHL, GREGORY T. BIER, | | |
| LINDA W. CLEMENT-HOLMES, | : | **COMPLAINT and JURY DEMAND** |
| KENNETH C. LICHTENDAHL, | | |
| W. RODNEY MCMULLEN, | : | |
| GRETCHEN W. PRICE, DOUGLAS S. | | |
| SKIDMORE, KENNETH W. STECHER, | : | |
| JOHN F. STEELE, JR., | | |
| LARRY R. WEBB, E. ANTHONY WOODS, | : | |
| STEVEN J. JOHNSTON, JACOB F. | | |
| SCHERER, JR., THOMAS A. JOSEPH, | : | |
| and MARTIN F. HOLLENBECK, | | |
| | : | |
| Defendants. | : | |

Plaintiff Robert W. Black ("Plaintiff") alleges, upon information and belief, based on, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge as follows:

1.      Plaintiff brings this action on behalf of himself for the benefit of himself and the stockholders of Cincinnati Financial Corporation ("Cincinnati Financial" or the "Company") against Cincinnati Financial, Cincinnati Financial's Board of Directors (the "Board") and Cincinnati Financial's named executives.  This action challenges Cincinnati Financial's Proxy Statement filed on March 18, 2011 (the "2011 Proxy") as violating Section 14(a) of the

1

Securities and Exchange Act of 1934 (the "Exchange Act'), 15 U.S.C. §78n(a), and Regulation 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9

2.      The shareholder solicitation labeled "Proposal 5 – Re-approval of Performance Objectives of the 2006 Cincinnati Financial Corporation Stock Compensation Plan" ("Proposal 5") in Cincinnati Financial's 2011 Proxy is of particular concern.  Proposal 5 seeks re-approval of the performance goals in Cincinnati Financial's 2006 Stock Compensation Plan.  The 2011 Proxy is false and misleading because it asserts that a vote in favor of Proposal 5 will make compensation paid to Cincinnati Financial's top executives under Cincinnati Financial's 2006 Stock Compensation Plan tax deductible pursuant to the Internal Revenue Code ("IRC"), 26 U.S.C. § 162(m), known as § 162(m) or IRC § 162(m).  As detailed herein, the performance goals in Cincinnati Financial's 2006 Stock Compensation Plan are too general and lack the required specificity for compensation paid thereunder to qualify for tax deductibility under IRC §162(m).  This taints the entire 2011 Proxy.

3.      Plaintiff seeks to enjoin a shareholder vote until the 2011 Proxy is corrected. Such corrections could occur in at least one of four ways:

(i)     Correct the 2006 Stock Compensation Plan and Proposal 5 to comply with IRC § 162(m)'s specific performance goal requirements;

(ii)    Place language in Proposal 5 telling shareholders that the 2006 Stock Compensation Plan may not comply with IRC § 162(m) and that the Company may be subject to future litigation for corporate waste, amongst other things;

(iii)   Modify 2011 Proxy to instead seek re-approval and re-institution of Cincinnati Financial's other 2006 plan – Cincinnati Financial's 2006 Incentive Compensation Plan (which set forth specific performance goals, but was previously replaced);

(iv)    Make one or more of the modifications above, and revise the 2011 Proxy to seek binding shareholder approval of specific goals established by

2

Cincinnati Financial's Compensation Committee for 2011 incentive compensation.

4.     Because the shareholder vote on Proposal 5 and the 2011 Proxy is scheduled imminently--on April 30, 2011, Plaintiff seeks an immediate injunction pending litigation on this matter.

## JURISDICTION

5.     The jurisdiction of this Court is founded upon: (a) federal question jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331. Diversity jurisdiction also exists under 28 U.S.C. §1332.

6.     Plaintiff is a citizen of the State of Nevada and the Defendants are citizens of the State of Ohio.

7.     The claims hereunder arise under Exchange Act § 14(a), 15 U.S.C. §78n(a); SEC Rule 14a-9, 17 C.F.R. § 240.14a-9; SEC Schedule 14A, 17 C.F.R. § 240.14a-101; and SEC Regulation S-K (Item 402),17 C.F.R. § 229.402.  The provisions of IRC § 162(m), 26 U.S.C. § 162(m), and Treasury Regulation 26 C.F.R. § 1.162-27 also apply.

8.     In connection with the acts, omissions, conduct, and wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce in committing the wrongs alleged herein.

## PARTIES

9     Plaintiff, a resident of Nevada, is and was at all relevant times a stockholder of Cincinnati Financial.

10.     **The Company:**  Cincinnati Financial Corporation is organized under the laws of the State of Ohio and is headquartered in Fairfield, Ohio.  As of February 21, 2011, there were 163,000,007 shares of Cincinnati Financial common stock outstanding.  Cincinnati Financial's

stock trades on the Nasdaq Global Select Market under the symbol CINF.  Cincinnati Financial's main business is property casualty insurance marketed through independent insurance agents in 39 states.

11.    **Cincinnati Financial's Board of Directors:**  Defendants John J. Schiff, Jr., Thomas R. Schiff, William F. Bahl, Gregory T. Bier, Linda W. Clement-Holmes, Kenneth C. Lichtendahl, W. Rodney McMullen, Gretchen W. Price, Douglas S. Skidmore, Kenneth W. Stecher, John F. Steele, Jr., Larry R. Webb, and E. Anthony Woods, are all members of the Company's Board ("Director Defendants").   John J. Schiff, Jr. is Chairman of Cincinnati Financial's Board.

12.    **Named Executives:**  Defendants Kenneth W. Stecher, Steven J. Johnston, Jacob F. Scherer, Jr., Thomas A. Joseph, and Martin F. Hollenbeck are the Named Executive Officers as defined in 17 C.F.R. § 229.402(a)(3), and Covered Employees as defined in IRC § 162(m)(c)(ii)(2).  Said executives are referred to herein as "Named Executives," or together with the Director Defendants, are called the "Individual Defendants."

13.    Defendant and Named Executive Officer Kenneth W. Stecher is Cincinnati Financials's President and Chief Executive Officer and also serves as a Director of Cincinnati Financial).

14.    Defendant and Named Executive Officer Steven J. Johnston, FCAS, MAAA, CFA, is and has been Cincinnati Financial's Chief Financial Officer, Senior Vice President, Secretary, and Treasurer since 2008.

15.    Defendant and Named Executive Officer Martin H. Hollenbeck, CFA, CPCU, is Cincinnati Financial's Chief Investment Officer, Senior Vice President, Assistant Secretary, and Assistant Treasurer.

16.     Defendant and Named Executive Officer Jacob F. Scherer, Jr. has been Executive Vice President since 2008 of The Cincinnati Insurance Company and was Senior Vice President until 2008.

17.     Defendant and Named Executive Officer Thomas A. Joseph, CPCU has been President of Cincinnati Casualty Company, a subsidiary of Cincinnati Financial Corp., since June 2008. He is Senior Vice President of The Cincinnati Insurance Company, a subsidiary of Cincinnati Financial. He is a director of Cincinnati Financial. .

18.     All full-time employees of the Company and its subsidiaries and affiliates (including the Named Executives) are eligible to be granted awards under the 2006 Stock Compensation Plan.

I.     **DEFENDANTS' WRONGFUL ACTS AND OMISSIONS UNDER EXCHANGE ACT § 14(a) AND THE 2011 PROXY'S AND 2006 STOCK COMPENSATION PLAN'S FAILURE TO COMPLY WITH IRC § 162(m)**

A.     **The False And Misleading 2011 Proxy**

19.     Cincinnati Financial's 2011 Proxy states that shareholders are being asked to re-approve the Company's 2006 Stock Compensation Plan in order to make compensation paid thereunder tax deductible pursuant to 26 U.S.C. § 162(m), as follows:

> We are asking shareholders to consider and re-approve the material terms of the performance goals under the Company's 2006 Stock Compensation Plan (the 2006 Plan) **so that compensation payable under the 2006 Plan to certain covered employees is tax deductible under Section 162(m)** of the Internal Revenue Code of 1986 (Section 162(m)).

(Proxy at p. 22, emphasis added).

20.     However, under IRC § 162(m) and accompanying Treasury Regulations, the performance goals for which re-approval is sought are too broad for compensation paid under the 2006 Stock Compensation Plan to be tax-deductible.  The failure to obtain valid shareholder

approval of an incentive compensation plan having *specific* performance goals would needlessly deprive the Company of millions of dollars of tax benefits.

21.     Furthermore, in 2006, Cincinnati Financial's § 162(m) compensation was governed by a different plan, entitled "Cincinnati Financial's 2006 Incentive Compensation Plan," which had more specific performance goals.

23.     Cincinnati Financial's's 2006 Incentive Compensation Plan was replaced by Cincinnati Financials's 2009 Incentive Compensation Plan. The 2009 Incentive Compensation Plan broadened performance goals for incentive compensation, thereby running afoul of IRC § 162 and the related regulations.

24.     The 2011 Proxy is false and misleading and omitted information required by Exchange Act § 14(a), Rule 14a-9, Schedule 14A, and Regulation S-K promulgated thereunder, because, *inter alia*, the 2011 Proxy represents that shareholder re-approval will render tax-deductible incentive compensation made under the 2006 Stock Compensation Plan – when in fact such compensation will not be deductible under IRC § 162(m) and related regulations.  If left uncorrected, Defendants' dissemination of the 2011 Proxy will cause shareholders to re-approve a non-tax-deductible plan.

25.     The 2011 Proxy notes that: "The committee does not employ compensation consultants for recommendations concerning executive compensation."

26.     Plaintiff seeks corrected disclosures and incentive plan clarifications prior to the shareholder vote on April 30, 2011.

**B.** **IRC § 162(m) and the Tax Deductibility of Compensation of Over $1 Million Paid To "Covered Employees"**

27. IRC § 162(a)(1), 26 U.S.C. § 162(a)(1), provides that "a reasonable allowance for salaries or other compensation for personal services actually rendered" by employees is tax deductible.

28. IRC § 162(m) provides that compensation paid to a public company's chief executive officer and four most highly compensated other officers will be deductible only up to $1 million, unless the compensation is paid solely for attaining one or more objective performance goals. To qualify for the deduction, the performance goals must: (i) be determined by a two-or-more member compensation committee of the board of directors; (ii) along with the applicable corporate officers' compensation package, be disclosed to, and approved by, a shareholder majority vote; and (iii) be confirmed by the compensation committee as being met before any compensation is paid. Treas. Reg. § 1.162-27(e)(v)(2), 26 C.F.R. § 1.162-27(e)(v)(2).

29. In other words, generally, a publicly-held corporation is limited to deducting $1 million of compensation per year for each "covered employee" (*i.e.*, the CEO and four highest-compensated officers). Treas. Reg. § 1.162-27, 26 C.F.R. § 1.162-27(b) and (c)(2). The $1 million limit does not apply to "qualified performance-based compensation" which meets the requirements of IRC § 162(m) and the Treasury regulations thereunder. 26 U.S.C. § 1.162-27(e)(1). Qualified performance-based compensation must be paid solely on account of the attainment of one or more pre-established, objective performance goals. 26 C.F.R. § 1.162-27(e)(2).

30. The requirements for avoiding the $1 million deductibility limit include, *inter alia*, **shareholder approval of the performance goal, after disclosure of the material terms of the performance goal under which the compensation is to be paid**. 26 C.F.R. § 1.162-27

7

(e)(4) (emphasis added).   A performance goal's material terms include: (a) the eligible employees; (b) **a description of the business criteria on which the performance goal is based**; and (c) either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained.  *Id* (emphasis added).

31.    Although a corporation is not required to disclose the specific performance *target* set by its compensation committee, the corporation must disclose to shareholders the specific criteria upon which bonuses will be paid.  *See, e.g.,* 26 C.F.R. § 1.162-27(e)(4)(ix) (Example 3) ("However, Corporation Y must disclose that bonuses are paid on the basis of earnings per share, reductions in costs, and increases in sales of specified divisions.")

32.    The compensation plan performance goal disclosure "must be specific enough so that shareholders can determine the maximum amount of compensation that could be paid to any employee during a specified period.  If the terms of the performance goal do not provide for a maximum dollar amount, the disclosure must include the formula under which the compensation would be calculated." 26 C.F.R. § 1.162-27(e)(4)(iv).  For instance, a disclosure that "bonuses will be paid on the basis of the annual increase in sales" does <u>not</u> meet the disclosure requirements "because it does not include the formula for calculating the compensation or a maximum amount of compensation to be paid if the performance goal is satisfied."  26. C.F.R. §1.172-27(i)(4)(ix)(Example 2.)[1]   Defendants' proxy disclosures to the shareholders did not meet these requirements.

---

[1]    Disclosures for compensation attributable to stock options must include "the maximum number of shares for which grants may be made to any employee and the exercise price of those options." 26 C.F.R. § 1.162-27(e)(4)(iv).

33.     Disclosures for compensation attributable to the exercise of stock options must include "the maximum number of shares for which grants may be made to any employee and the exercise price of those options." *Id.*

34.     Congress enacted IRC § 162(m) as part of its effort to regulate corporate affairs in favor of stockholders and other investors. The Joint Committee on Taxation stated: "The $1 million deduction limitation reflects corporate governance issues regarding excessive compensation, rather than issues of tax policy." Joint Committee on Taxation, Report of Investigation of Enron Corporation and Related Entities Regarding Federal Tax and Compensation Issues and Policy Recommendations, 2003 WL 25599037 n. 2211 and accompanying text (2003).

**C.    Cincinnati Financial's 2011 Proxy Fails To Meet Requirements:**

35.     As previously alleged, Defendants disseminated the 2011 Proxy to solicit, *inter alia*, shareholder re-approval of performance objectives contained in Cincinnati Financial's 2006 Stock Compensation Plan at an annual shareholder meeting to take place on April 30, 2011. Proxy at 22-24.

36.     However, the 2011 Proxy failed to meet the above-discussed disclosure requirements to obtain valid shareholder re-approval. Instead of disclosing the required specific objective criteria upon which bonuses will be paid, the 2011 Proxy contains a menu of eleven broad performance goals which Cincinnati Financial's Compensation Committee could use (in some unspecified manner) as bases for setting performance targets: (1) earnings per share, (2) total shareholder return, (3) operating income, (4) net income, (5) adjusted net earnings, (6) cash flow, (7) return on equity, (8) return on capital, (9) the combined ratio, (10) net premium growth, and/or (11) net investment performance. 2011 Proxy p. 22.

37.    Cincinnati Financial's 2006 Stock Compensation Plan, for which the 2011 Proxy solicits re-approval, contains these same eleven inadequate non-specific "performance goals." 2006 Proxy, Appx. B, p. 32.

38.    The 2011 Proxy was materially false and misleading in that it omitted to disclose the performance goals with the requisite meaningful specificity.  The House Conference Report, reciting the intent of Congress in passing IRC § 162(m)(4)(C)(ii), states:

> In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary [of the Treasury] should take into account the SEC rules regarding disclosure.  To the extent consistent with those rules, however, disclosure should be as *specific* as possible.

H.R. Conf. Rep. 103-213 at *588, 1993 WL 302291 (Aug. 4, 1993).  The Treasury Regulations expressly refer to the applicability of the SEC regulations.  *See* Treas. Reg. § 1.162-27(e)(4)(v), 26 C.F.R. § 1.162-27(e)(4)(v).

39.    All Defendants negligently made misrepresentations concerning the deductibility of the incentive payments under the Plan.

40.    All Defendants negligently omitted the terms and provisions of the performance goals which were required to be disclosed in order to qualify for the tax deductions under IRC § 162(m).

42.    Defendants' acts and omissions in the 2011 Proxy have caused injury to the Company and its stockholders, who are being deprived of all material facts necessary to make a fully informed vote.

### D.    Cincinnati Financial's Other 2006 Plan

43.    The 2006 Stock Compensation Plan, for which the 2011 Proxy solicits re-approval, was not the plan governing Cincinnati Financial's 2006 § 162(m) compensation.  Two plans were appended to Cincinnati Financial's 2006 Proxy: the general 2006 Stock

Compensation Plan (for which the 2011 Proxy now seeks re-approval) and a plan entitled "Cincinnati Financial Corporation Incentive Compensation Plan" (the "2006 Incentive Compensation Plan," *see* 2006 Proxy, Appx. A, pp. 30-31).

44.     Only the latter plan, the 2006 Incentive Compensation Plan, for which re-approval is <u>not</u> being sought now, addressed § 162(m) compensation.

45.     The 2006 Incentive Compensation Plan, which was replaced in 2009, directly addressed IRC § 162(m) and accompanying regulatory requirements.  Cincinnati Financial's 2006 Incentive Compensation Plan stated that its purpose was as follows:

> **Purpose.**  The purpose of the Cincinnati Financial Corporation Incentive Compensation Plan ("Plan") is to provide the president and chief executive officer and the four most highly compensated officers other than the president and chief executive officer ("Participants") of Cincinnati Financial Corporation and its subsidiaries on a consolidated basis ("Company") with bonus compensation based upon the achievement of pre-established performance goals, as well as to maintain the Company's income tax deduction for the entire amount of the annual compensation paid to the Participants pursuant to Section 162(m) of the Internal Revenue Code.

46.     The since-replaced 2006 Incentive Compensation Plan established a $1 million per recipient incentive compensation limit and provided for the following specific performance goals and provisos:

> **Performance-Based Formula**.  Awards under the Plan shall be earned upon the achievement by the Company of any two of the following performance goals:
>
> a.     A specified percentage increase in gross direct written premiums for the calendar year over those for the prior year;
>
> b.     A specified percentage increase in operating income for the calendar year over that of the prior year (In calculating the Company's operating income, the effects of capital gains and losses and accounting changes shall not be considered nor will losses attributable to catastrophes which are assigned catastrophe numbers by the American Insurance Services Offices);

     c.     Exceeding the median annual percentage increase in earnings per share for the Company's Peer Group for the calendar year, including the effects of catastrophic losses, but excluding the effects of capital gains and losses and accounting changes.

As soon as practicable either before or within 90 days after the beginning of each calendar year, the Committee shall establish written targets for the percentage increases described in Paragraphs 1 and 2 above.

For purposes of Paragraph 3 above, the Company's Peer Group includes the following: Chubb, Ohio Casualty, St. Paul Travelers, Safeco and Selective Insurance Group.

Notwithstanding anything to the contrary in this Plan, the Committee retains complete discretion to reduce the amount of or eliminate the award for any Participant in light of factors deemed appropriate by the Committee, but in no event may any award be increased beyond $1,000,000 for any calendar year.

47.     By contrast to these specific goals, the purported 2006 Compensation Plan for which re-approval is now sought is, in essence, merely an over-arching "menu" for Cincinnati Financial's Compensation Committee to consider when establishing actual incentive compensation. The 2011 Proxy thus fails to give Cincinnati Financial's shareholders the requisite disclosures and opportunity for a binding vote on a Cincinnati Financial incentive compensation plan with specific performance goals that meet IRC § 162(m) and regulatory requirements.

48.     The 2006 Incentive Compensation Plan, which contained specific performance criteria in 2006, was replaced in 2009 with an incentive compensation plan that lacked specific performance criteria. The 2009 incentive compensation plan was a "menu-style" plan which did not meet Treasury Regulation requirements.

49.     The 2011 Proxy states that Cincinnati Financial's 2006 Incentive Compensation Plan was replaced with another Incentive Compensation Plan in 2009, which broadened the participants and the performance goals as follows:

> Annual incentive compensation. Under the shareholder-approved Annual Incentive Compensation Plan of 2009 (2009 Plan), all executive officers are eligible to annually receive an award of up to $1 million in cash based on achievement of specific performance-based criteria. The Incentive Compensation Plan replaced an older plan in which only the named executive officers were eligible to participate.
>
> The 2009 Plan offers **a wide range of performance objectives** from which the committee may select one or more performance targets to focus the attention of executive officers on short term tactical actions believed to be important for achievement of longer term strategic goals.  It also features a forfeiture and recoupment provision to enable the company to recover payments under this plan when circumstances warrant.

2011 Proxy, p. 30 (emphasis added).

50.     Defendants' solicitation for re-approval, in Cincinnati Financial's 2011 Proxy, thus creates confusion and risks running afoul of tax regulations because, *inter alia*, the 2011 Proxy only seeks re-approval of the non-specific 2006 Stock Compensation Plan attached to Cincinnati Financial's 2006 Proxy, and claims that such reapproval will make compensation payable under the 2006 Stock Compensation Plan tax deductible.  The 2006 Stock Compensation Plan does not meet IRC § 162(m) and related Treasury requirements regarding specific performance objectives.

52.     One of Defendants' alternatives for correcting the 2011 Proxy would be to ask for re-approval and re-institution of the 2006 Incentive Compensation Plan, which contained specific performance objectives.

**E.**     **The 2011 Proxy Fails To Give Shareholders A Binding Vote On Performance Goals Set By Cincinnati Financial's Compensation Committee For 2011 Compensation**

53.     The 2011 Proxy also discusses performance objectives for 2011 incentive awards established by Cincinnati Financial's Compensation Committee, but does not give shareholders an opportunity for a binding vote on these performance goals.  The 2011 Proxy states as follows:

> Decisions for 2011: At its February 18, 2011, meeting, the [Compensation] committee determined that the tier assignments, level of awards and performance hurdles and potential payouts used in 2010 were appropriate for 2011 awards. Accordingly, target levels of annual incentive compensation grants were established at $771,090 for Mr. Stecher, $407,934 for Mr. Johnston, $456,041 for Mr. Scherer, $370,659 for Mr. Joseph and $338,000 for Mr. Hollenbeck. The performance objective for the awards is the level of value creation ratio achieved for 2011 compared with the eight companies in the Peer Group. Performance hurdles for threshold, target and maximum awards were set at the 37.5th, 50th and 75th percentiles of the Peer Group. Achievement of threshold, target and maximum performance hurdles earn award payouts of 30 percent, 100 percent and 200 percent, respectively of target. The committee uses the same tier assignment and related percentage of salary to determine the target level of stock-based awards to balance overall performance-based, short-term and long-term compensation.

2011 Proxy, p. 31.

> 2011 Grants. At its meeting on February 18, 2011, maintaining the new structure for executive compensation begun in 2010, the committee granted performance-based stock compensation awards of nonqualified stock options and performance-based restricted stock units for the named executive officers. The grant date value of target levels for these performance-based stock compensation awards was determined as a percentage of the named executive officer's salary as described in 3-Year History of Total Direct Compensation at a Glance on Page 28. Two-thirds of the grant date value is allocated to nonqualified stock options and one-third is allocated to performance-based restricted stock units. The number of stock options or restricted stock units is determined by dividing the allocated amount for each award by the average of the high and low sales price for the company's stock on Nasdaq on the date of grant.

> The performance objective for the performance-based restricted stock units is the level of three-year total shareholder return achieved for the three years ending December 31, 2013, compared with the eight companies in the Peer Group.

Performance hurdles for threshold, target and maximum awards were set at the 25th, 50th and 75th percentiles of the Peer Group. Achievement of threshold, target and maximum performance hurdles earn award payouts of 75 percent, 100 percent and 125 percent, respectively of target.

2011 Proxy, p. 33.

54.     The 2011 Proxy does not solicit binding shareholder approval for these specific performance goals, as should be done in order to meet the requirements of IRC § 162 and applicable Treasury Regulations.

55.     Defendants' acts and omissions in the 2011 Proxy, if left uncorrected prior to the shareholder vote scheduled for April 30, 2011, will cause imminent injury to the Company and its stockholders.  Despite Defendants' failure to provide shareholders with the opportunity to have a binding vote to approve an incentive compensation plan that meets the requirements of IRC § 162(m) and accompanying regulations, the 2011 Proxy leaves Cincinnati Financial's shareholders with the misleading impression that compensation paid to Named Executives in excess of $1 million will be tax deductible.  Specifically, the 2011 Proxy states (at page 41):

Tax policies.  Section 162(m) limits to $1 million per year the federal income tax deduction to public corporations for compensation paid for any fiscal year to any individual who is identified as a named executive officer as of the end of the fiscal year in accordance with the Exchange Act.  This limitation does not apply to qualifying "performance-based compensation."  **Our committee designed our annual incentive compensation awards** (which permit the committee to exercise negative discretion to reduce or eliminate payment of awards as it did in 2008) **and performance-based restricted stock units to qualify for the performance-based compensation exception to the $1 million limit.  In addition, stock options are considered performance-based compensation that qualify for the exception.**

(Emphasis added.)

56.     Accordingly, Plaintiff seeks proper disclosures to shareholders so that Cincinnati Financial's shareholders can have a binding, valid vote to approve an incentive compensation plan with specific performance goals meeting IRC § 162(m) and regulatory requirements.

57.     One of Defendants' alternatives for correcting the 2011 Proxy would be to make one or more of the other modifications requested herein and to solicit a binding vote on the 2011 performance goals established by Cincinnati Financial's Compensation Committee.

**F.      Additional Background On Cincinnati Financial's 2009 Incentive Compensation Plan, Which Improperly Broadened Performance Goals:**

58.     In 2009, Cincinnati Financial's 2006 Incentive Compensation Plan was replaced and significantly changed.  Cincinnati Financial's 2009 Proxy filed on March 20, 2009, stated:

> In the first quarter of 2009, the committee intends to consider annual incentive compensation awards to eligible named executive officers using one or more of the performance objectives available under the amended and restated annual incentive compensation plan, subject to shareholder approval at the 2009 Annual Meeting of Shareholders.  In keeping with its past practice, the committee intends to continue to disclose performance targets in awards granted under the new plan. **Primary differences between the existing plan and the new plan are the addition of a wider range of performance objectives** intended to focus the attention of named executive officers on short term tactical actions believed to be important for achievement of longer term strategic goals, and the addition of a forfeiture and recoupment provision to enable the company to recover payments under this plan when circumstances warrant.

(Page 23, Emphasis added.)

59.     The 2009 Proxy further described the purpose and performance goals of the Cincinnati Financial Corporation Annual Incentive Compensation Plan of 2009 (the "2009 Incentive Compensation Plan") as follows:

Proposal 3 — Management's Proposal to Adopt Cincinnati Financial Corporation
Annual Incentive Compensation Plan of 2009

Purpose

16

The board of directors of the company has approved and recommends shareholder approval of the Cincinnati Financial Corporation Annual Incentive Compensation Plan of 2009, (a copy of which is attached as Appendix A). The 2009 Incentive Plan replaces the shareholder-approved 2006 Annual Incentive Compensation Plan.

The purposes of the plan are to:

•   Link bonus compensation for the executive officers of the company, to the company's achievement of pre-established performance goals.

•   Maximize the company's federal income tax deduction for the annual cash compensation paid to those executives pursuant to Section 162(m) of the Internal Revenue Code.

Under Internal Revenue Code Section 162(m), the compensation of any one of the named executive officers, to the extent it exceeds $1 million per year, is a deductible expense by the company only when any amount of compensation exceeding $1 million is based upon the achievement of pre-established performance goals.  Approval of this plan would allow the company to maximize its income tax deduction if the bonuses paid under the plan cause total compensation for any participant to exceed $1 million in any calendar year.

<u>Plan Description</u>

The company's executive officers are eligible to participate in the plan. Participants are eligible to receive awards under the plan upon achievement by the company and its subsidiaries on a consolidated basis of one or more performance goals specified in the plan.  **The 2009 Incentive Plan provides a wider variety of performance objectives from which the compensation committee can select appropriate short-term performance objectives to support the company's strategic objectives.  Performance goals under the 2009 Incentive Plan include: total shareholder return, return on equity, return on economic capital, change in operating income, underwriting profitability, revenue, expenses, earnings per share, operating earnings per share or the company's value creation ratio defined by the plan. Performance goals may be numeric or a comparison to the peer group.**

The compensation committee sets the performance targets within the first 90 days of the calendar year to which the goals apply.  The maximum bonus amount each participant is eligible to receive is $1 million annually, with the actual amount of

any bonus set by the compensation committee pursuant to the overall compensation policies of the committee. The compensation committee may exercise negative discretion to reduce or eliminate the amount of any award earned upon achievement of the specified performance goal for the year.  Awards may be forfeited or recouped by the company in certain cases of misconduct by the officer.

The board of directors may modify or terminate the plan at any time for any legal purpose.  However, shareholder approval of any modifications to material terms of the plan is necessary for the company to retain its federal income tax deduction for compensation paid under this plan.

There are **three substantive differences between the 2009 Incentive Plan and the predecessor plan**.  First, the **definition of "participant" is expanded** to include all executive officers instead of only the "top five" named in the proxy statement.  This expansion is intended to support the committee's ability to use this compensation plan for certain executive officers without the eligibility disruption caused by one-time events that can determine which executive officers are included in the company's Summary Compensation Table**.  Next, the 2009 Incentive Plan includes a variety of performance objectives that can be used by the committee to establish performance targets for awards while the predecessor plan used a static 3-part performance objective**.  Last, the 2009 Incentive Plan includes new forfeiture and recoupment provisions that allow the company to recover awards in certain cases of misconduct by the participant.

Subject to shareholder approval of the plan, in the first 90 days of 2009, the committee intends to establish performance targets and grant awards under the 2009 Incentive Plan to one or more executive officers.

(Page 41, Emphasis added.)

60.     The 2009 Incentive Compensation Plan, annexed as Appendix A to Cincinnati

Financial's 2009 Proxy, paragraph 1, likewise described the plan's purpose as follows:

Purpose.  The purpose of the Cincinnati Financial Corporation Annual Incentive Compensation Plan of 2009 is to provide the executive officers of Cincinnati Financial Corporation and its subsidiaries on a consolidated basis with bonus compensation based upon the achievement of pre-established Performance Goals, as well as to maximize the Company's income tax deduction for the amount of the annual compensation paid to the president and

18

chief executive officer and the four most highly compensated executive officers other than the president and chief executive officer, pursuant to Section 162(m) of the Internal Revenue Code.

61.     The 2009 Incentive Compensation Plan, set forth broad "performance-based goals" as follows:

6.   Performance-Based Goals.

a.   Awards under the Plan are earned upon the achievement by the Company of the Performance Goal set forth in the Award Agreement.  **The Committee may establish the Performance Goal for the Performance Year based on one or more of the following performance objectives:  total shareholder return, return on equity, return on economic capital, change in operating income, underwriting profitability, revenue, expenses, earnings per share, operating earnings per share, or Value Creation Ratio. Performance Goals may be numeric or a comparison to the peer group.**

b.   Written targets for the Performance Goal are established by the Committee as soon as practicable either before or within 90 days after the beginning of each calendar year.

c.   Notwithstanding anything to the contrary in this Plan, the Committee retains complete negative discretion (within the meaning of the applicable rules of the Internal Revenue Service under Section 162(m) of the Code) to reduce the amount of or eliminate part or all of the Award otherwise earned by the Participant upon the attainment of the Performance Goal in light of factors deemed appropriate by the Committee, but in no event may the Committee increase the amount of the Award payable to a Participant upon the attainment of the Performance Goal.

Cincinnati Financial's 2009 Proxy, Appendix A, para. 6, p. 50 (emphasis added).

## CLAIM FOR RELIEF

### Violations of § 14(a) of the Exchange Act and SEC Regulations
### (Direct Claim Against All Defendants)

62.     Plaintiff realleges the applicable preceding paragraphs as set forth above and incorporate them herein by reference.

63.    Defendants caused materially false statements to be disseminated to the stockholders in the 2011 Proxy Statement.

64.    The acts of the Defendants have injured the Plaintiff directly by providing materially false information that the SEC and IRS regulations specifically requires in proxy statements.

65.    As a result of these actions of the Defendants, the Plaintiff will be damaged imminently by the denial of a fully informed vote.

66.    Plaintiff has no adequate remedy at law.  To ameliorate this injury, injunctive relief is required in the form of an order requiring Defendants to disseminate corrective disclosures and to hold an informed, binding vote on Cincinnati Financial's incentive compensation plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    An order requiring Defendants to correct the 2011 Proxy prior to the shareholder vote on April 30, 2011, in one or more of the following ways:

   (i)    Correct the 2006 Stock Compensation Plan and Proposal 5 to comply with IRC § 162(m)'s specific performance goal requirements;

   (ii)    Place language in Proposal 5 telling shareholders that the 2006 Stock Compensation Plan may not comply with IRC § 162(m) and that the Company may be subject to future litigation for corporate waste, amongst other things;

   (iii)    Modify 2011 Proxy to instead seek re-approval and re-institution of Cincinnati Financial's other 2006 plan, Cincinnati Financials's 2006 Incentive Compensation Plan (which set forth specific performance goals, but was previously replaced);

   (iv)    Make one or more of the modifications above, and revise the 2011 Proxy to seek binding shareholder approval of specific goals established by Cincinnati Financial's Compensation Committee for 2011 incentive compensation.

20

B.       An order postponing the shareholder vote until such changes are made;

C.       An order awarding Plaintiff the costs and disbursements of this action, including reasonable accountant, expert,  and attorneys' fees and costs; and

D.       An order granting such additional or different relief, including monetary relief, that the interests of justice or equity may require.

_____s/Ann Lugbill_____
Arlus Stephens (0067384)
Murphy Anderson PLLC
1701 K Street N.W., Suite 210
Washington, DC 20006.
Phone: 202-223-2620
Fax: 202-223-8651
*astephens@murphypllc.com*

Ann Lugbill (0023632)
Murphy Anderson PLLC
2406 Auburn Ave.
Cincinnati, OH  45219
Phone: 513-784-1280
Fax: 877-784-1449
*alugbill@murphypllc.com*
Trial Attorneys for Plaintiff

Eduard Korsinsky
LEVI & KORSINSKY, LLP
30 Broad Street, 15th Floor
New York, New York 10004
Phone: 212- 363-7500
Fax: 212- 363-7171
*ek@zlk.com*
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims triable to a jury.

____s/Ann Lugbill_____
Ann Lugbill, Trial Attorney for Plaintiff

21