UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert W. Black,

        Plaintiff,                             Case No.: 1:11-cv-210

        v.                                Judge Michael R. Barrett

Cincinnati Financial Corporation, et al,

        Defendants.

## OPINION

This matter is before the Court on Plaintiff Robert W. Black's Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (Doc. 7).[1] The Defendants (collectively "Cincinnati Financial") have filed a response (Doc. 12), and Plaintiff has filed a partial reply (Doc. 14). Additionally, the Court heard oral arguments relative to this matter at a hearing on April 27, 2011 (the "Hearing").

Plaintiff's motion (Doc. 7) requests a temporary restraining order and preliminary injunction prohibiting Cincinnati Financial from holding its shareholder vote, scheduled for Saturday, April 30, 2011, at 9:30 a.m. Plaintiff requests that Cincinnati Financial be required to modify its 2011 Proxy Statement filed on March 18, 2011 (the "2011 Proxy"), to make it comply with Section 14(a) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78n(a)), Regulation 14a-9, (17 C.F.R. § 240.14a-9), and Internal Revenue Code § 162(m) (26 U.S.C. § 162(m)). (Doc. 7, 2.)

Plaintiff's Amended Complaint (Doc. 13) brings two counts. Count one is a direct

---

[1] All Court document citations are to Docket Entry numbers.

claim against all Defendants that alleges violations of Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"). (Doc. 13, 22.) Count two is a derivative claim on behalf of Cincinnati Financial against all individual Defendants that alleges violations of Section 14(a) of the Exchange Act as well as violations of SEC regulations, Internal Revenue Code § 162(m), and its accompanying regulations. (Doc. 13, 23.)

## I.    Background

The Amended Complaint states that the 2011 Proxy contains materially false and misleading statements and omissions. Specifically, Plaintiff alleges that "Proposal 5—Re-approval of Performance Objectives of the 2006 Cincinnati Financial Corporation Stock Compensation Plan" ("Proposal 5") in the 2011 Proxy is a violation of Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) and Regulation 14a-9 (17 C.F.R. § 240.14a-9). The 2011 Proxy is allegedly false and misleading because it states that Proposal 5 will make compensation paid to Cincinnati Financial's top executives under the 2006 Stock Compensation Plan (the "2006 Stock Plan") tax deductible pursuant to 26 U.S.C. § 162(m). However, Plaintiff contends that the performance goals in the 2006 Stock Plan are too general to qualify for deductibility and that this taints the entire 2011 Proxy. (Doc. 7, 6.)

Plaintiff seeks immediate injunctive relief enjoining the April 30, 2011, shareholder vote until Defendants amend the 2011 Proxy. (Doc. 7, 7.) Plaintiff claims that injunctive relief is necessary because he has no adequate remedy at law. (Doc. 13 ¶¶ 71, 76.)

## II.    Legal Analysis

### A.    Preliminary Injunction Standard

Under Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order ("TRO") is meant to preserve the status quo until a court can make a reasoned resolution of a dispute. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). TRO's are of a short duration and usually terminate with a ruling on a preliminary injunction. *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir. 2007); Fed. R. Civ. P. 65(b). Here, because Defendants are on notice, the Court treats Plaintiff's motion as a motion for a preliminary injunction rather than a motion for a temporary restraining order. *See* Fed. R. Civ. P. 65(a)(1). This difference is largely academic as the same factors apply to both. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 362 (6th Cir. 2008).

In determining whether to grant a preliminary injunction, this Court must consider four factors: "(1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not granted; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the injunction advances the public interest." *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009); *see also Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008). "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (*quoting Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)). A stronger showing of likelihood of success is required as the other factors militate against granting relief, but less likelihood of success is required when they do support granting

relief.  *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1385–86 (6th Cir. 1995).  "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue."  *City of Monroe*, 341 F.3d at 476.

### 1.      Likelihood of Success on the Merits

The first factor to consider on a motion for preliminary injunction is "whether the plaintiff has demonstrated 'a strong likelihood of success on the merits.'"  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (*quoting Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)).  While a party is not required to prove his entire case at a preliminary injunction hearing, to establish success on the merits, a plaintiff must show "'more than a mere possibility of success.'"  *Id.* (*citing  Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) and *quoting Six Clinics Holding Corp. II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

### a.      Demand Futility in a Derivative Action

Plaintiff brings this action directly and derivatively.  (Doc. 13 ¶ 1.)  A different step of analysis is required for a derivative action.  Rule 23.1 of the Federal Rules of Civil Procedure requires that when a shareholder brings a derivative action, the complaint must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . and . . . the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  In other words, Plaintiff must state "the reasons for failing to make a pre-suit demand."  *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008).  "If Plaintiffs do not comply with the requirements of Rule 23.1, they do not have standing to bring suit."  *Id.*

4

The substantive law of the state of incorporation, here Ohio (Doc. 13 ¶ 10), applies to determine whether Plaintiff's failure to make a demand is excused. *Id.*; *see also McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001). Under Ohio law, a corporation's directors have the responsibility of making decisions on the corporation's behalf. *Id.* They are the proper parties to bring suit on behalf of the corporation or, in their business judgment, to forego a lawsuit. *Id.* at 618 (*quoting Drage v. Proctor & Gamble*, 694 N.E.2d 479, 482 (Ohio Ct. App. 1997)). Furthermore, Ohio law presumes that "'any action taken by a director on behalf of the corporation is taken in *good faith and for the benefit of the corporation.*'" *Id.* (*quoting Drage*, 694 N.E.2d at 482). The requirement that shareholders demand directors to bring suit on behalf of a corporation is essentially a requirement that the shareholder exhaust his intracorporate remedies before going to federal court with a derivative suit. *Id.* Here, Plaintiff has not made any demand to Cincinnati Financial's Board of Directors (the "Board"). Plaintiff claims that any such demand would be "a futile and useless act." (Doc. 13 ¶ 64.)

Ohio recognizes an exception to the general demand rule. *In re Ferro Corp.*, 511 F.3d at 618. This exception permits a shareholder to proceed with a suit without making a demand when the shareholder can demonstrate that the demand would be futile. *Id.* "Plaintiffs carry the burden of showing that 'the directors cannot exercise independent, unbiased judgment when determining whether to sue themselves.'" *Id.* (*quoting Carlson v. Rabkin*, 789 N.E.2d 1122, 1128–29 (Ohio Ct. App. 2003)).

Under Ohio law, "futility" means that "'the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed.'" *Id.* (*quoting Carlson*, 789 N.E.2d at 1128). However, "Ohio

law presumes 'that directors can make an unbiased, independent business judgment about whether it would be in the corporation's best interests to sue some or all of the other directors.'" *Id.* (*quoting Drage*, 694 N.E.2d at 483).

Plaintiff's Amended Complaint alleges that any demand to the Board would have been futile because the business judgment rule does not apply to an issue of disclosure. (Doc. 13 ¶ 65.)  More specifically, Plaintiff argues that "[t]he Board's conduct concerning misrepresentations in, and the omissions from, a proxy statement are not matters of business judgment, and they are not protected by the business judgment rule . . . ." (Doc. 13 ¶ 65.)  Although this Court has found no case that specifically applies Ohio law to deal with this issue, a recent case is directly on point: *Resnik v. Boskin*, No. 09-5059, 2011 WL 689617, 2011 U.S. Dist. Lexis 16634 (D.N.J. Feb. 17, 2011).

The plaintiff in *Resnik*, an Exxon shareholder, alleged that Exxon and its board of directors and executive officers made a materially false or misleading proxy solicitation about the tax deductibility of a certain compensation package in violation of Section 14(a).  2011 WL 689617, at *1–2.  This is the same claim that Plaintiff brings here.  (*See* Doc. 13 ¶ 1.)  In evaluating the *Resnik* plaintiff's derivative action, the district court considered demand futility arguments identical to what Plaintiff Black makes.

Here, Plaintiff argues that demand is excused because misrepresentation and omissions in a proxy statement are not protected by the business judgment rule.  (Doc. 13 ¶ 65.)  The plaintiff in *Resnik* made the same argument: "Plaintiff . . . argu[es] that because of the subject matter of Plaintiff's claim—'misrepresentation and omissions in a proxy statement'—Plaintiff was not required to comply with traditional demand procedure."  2011 WL 689617, at *7.  Additionally, Plaintiff Black argues that "[f]ederal

6

law excuses demand whenever the challenged act of the board is not the product of a

valid exercise of business judgment . . . ."  (Doc. 13 ¶ 65.)  The plaintiff in *Resnik* made

the same argument: "New Jersey law and federal policy excuse demand whenever the

challenged act of the board is not the product of a valid exercise of business judgment .

. . ."  2011 WL 689617, at *7.  The *Resnik* court was not persuaded by these arguments.

*Id.*  This Court is not persuaded either.

        "Numerous courts have *specifically* held that a plaintiff who sets forth a *Section*

*14(a)* claim must still comply with demand procedure before initiating this litigation."  *Id.*

(*citing St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, No. 06 Civ. 688, 2006 WL

2849783, at *6 (S.D.N.Y. Oct. 4, 2006) and *In re IAC/InterActive Corp Secs. Litig*, 478 F.

Supp. 2d 574, 606 n.17 (S.D.N.Y. 2007)).  *Resnik* went on to examine the case law on

the issue and held that "the traditional demand requirements still apply when a plaintiff

sets forth claims of misrepresentations and/or omissions in a proxy statement."  *Id.* at

*8.  In doing so, it considered the following policy statement:

> If shareholders could elect to sue on behalf of a corporation
> without consulting the board of directors whenever they
> deemed a proxy statement to contain materially false
> information, shareholders could effectively usurp the board's
> decision as to whether litigation was merited.  The "demand
> requirement" permits the board, in the exercise of its
> business judgment, to choose forms of "alternate dispute
> resolution," and thereby upholds "the fundamental precept
> that directors manage the business and affairs of
> corporations."

*Bader v. Blankfein*, No. 07-CV-1130, 2008 WL 5274442, at *6 (E.D.N.Y. Dec. 19, 2008)

(*quoting Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds*,

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

        This Court agrees with *Resnik* and adopts its reasoning and analysis.  Therefore,

traditional demand requirements apply to Plaintiff's derivative claim.  Because Plaintiff

has failed to comply with this demand procedure, he has thereby failed to show a

possibility of success on the merits.  *See Certified Restoration Dry Cleaning Network*,

511 F.3d at 543.  Plaintiff's direct claim is considered next.

### b.    Direct Claim under Section 14(a)

The United States Supreme Court has recognized a private right of action for

breach of Section 14(a) of the Exchange Act,[2] as implemented by SEC Rule 14a-9,[3]

which prohibits the solicitation of proxies by means of materially false or misleading

statements.  *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1086–87 (1991).  "'To

state a claim under section 14(a), a plaintiff must aver that (1) a proxy statement

contained a material misrepresentation or omission which (2) caused the plaintiff injury

and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation

materials, was an essential link in the accomplishment of the transaction.'"  *NACCO*

*Indus., Inc. v. Applica Inc.*, No. 1:06-cv-3002, 2006 WL 3762090, at *7 (N.D. Ohio 2006)

---

[2] Section 14(a) provides as follows:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

15 U.S.C. § 78n(a).

[3] Rule 14a-9 provides as follows:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9.

(*citing Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir.

2004)). "[A] misrepresentation or omission is considered material if there is a

substantial likelihood that a reasonable shareholder would consider it important in

deciding how to vote." *Id.* (*quoting Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp.

2d 362, 414–15 (D. Del. 2005)).

Going to the first element of a Section 14(a) claim—that the proxy statement

contained a material misrepresentation or omission—Plaintiff asserts that Cincinnati

Financial's 2011 Proxy was misleading because shareholders are being asked to re-

approve the 2006 Stock Plan to make compensation tax deductible under 26 U.S.C. §

162(m). However, Plaintiff alleges that the performance goals under the 2006 Stock

Plan are too broad to be tax deductible under § 162(m). (Doc. 7, 10–11.) Defendants

argue that this conclusion is unsupported by Treasury Regulation 1.162-27.

### i. Section 162(m) and Regulation 1.162-27

Under Internal Revenue Code ("IRC") § 162(m), employee compensation in

excess of $1 million paid by a publicly held corporation is generally not tax deductible.

26 U.S.C. § 162(m)(1). However, an exception exists for "any remuneration payable

solely on account of the attainment of one or more performance goals." 26 U.S.C. §

162(m)(4)(C); *see also* 26 C.F.R. § 1.162-27(e)(1). This "qualified performance-based

compensation" is only tax deductible if three conditions are satisfied: (i) the performance

goals are determined by a compensation committee of outside directors; (ii) the material

terms under which the remuneration is to be paid, including the performance goals, are

disclosed to and approved by a majority of stockholders; and (iii) before any payment of

such remuneration, the compensation committee certifies that the performance goals

were met.  26 U.S.C. § 162(m)(4)(C).  Such "qualified performance-based

compensation" must additionally meets all requirements set forth in Treasury Regulation

section 1.162-27(e)(2) through (5).  26 C.F.R. § 1.162-27(e)(1).  These regulations are

dense and complex, but the parties both focus on the interpretation of 26 C.F.R. §

1.162-27(e)(4).  (Doc. 7, 9; Doc. 12, 11.)  Section 1.162-27(e)(4) states as follows:

> Shareholder approval requirement -- (i) General rule.  The
> material terms of the performance goal under which the
> compensation is to be paid must be disclosed to and
> subsequently approved by the shareholders of the publicly
> held corporation before the compensation is paid. . . . The
> material terms include the employees eligible to receive
> compensation; a description of the business criteria on which
> the performance goal is based; and either the maximum
> amount of compensation that could be paid to any employee
> or the formula used to calculate the amount of compensation
> to be paid to the employee if the performance goal is
> attained (except that, in the case of a formula based, in
> whole or in part, on a percentage of salary or base pay, the
> maximum dollar amount of compensation that could be paid
> to the employee must be disclosed).

26 C.F.R. § 1.162-27(e)(4).  Parsing this language, § 1.162-27(e)(4) requires three

elements of information to be disclosed to shareholders: (1) the employees eligible to

receive compensation; (2) a description of the business criteria the goals are based on;

and (3) either the maximum amount of compensation that could be paid *or* the formula

used to calculate the amount of compensation.  *Id.*  The parties' disagreement centers

on the second element—a description of the business criteria the goals are based on.

(Doc. 7, 9; Doc. 12, 11.)

As to this "business criteria," Treasury Regulation 1.162-27(e)(4)(iii) states the

following:

> Description of business criteria- (A) In general.  Disclosure of
> the business criteria on which the performance goal is based

> *need not include the specific targets that must be satisfied*
> *under the performance goal.*  For example, if a bonus plan
> provides that a bonus will be paid if earnings per share
> increase by 10 percent, the 10-percent figure is a target that
> need not be disclosed to shareholders.  However, in that
> case, disclosure must be made that the bonus plan is based
> on an earnings-per-share business criterion.  In the case of a
> plan under which employees may be granted stock options
> or stock appreciation rights, no specific description of the
> business criteria is required if the grants or awards are
> based on a stock price that is no less than current fair
> market value.

26 C.F.R. § 1.162-27(e)(4)(iii) (emphasis added).  Defendants argue that this language

shows that the specificity Plaintiff claims is not required.  (Doc. 12, 11.)  Defendants

maintain that the 2011 Proxy "goes further than what the Treasury Regulations require .

. . ."  (Doc. 12, 11.)  Regarding this business criteria, Proposal 5 of the 2011 Proxy

states that "[t]he performance goals . . . shall consist of objective tests based on one or

more of the following: earnings per share, total shareholder return, operating income,

net income, adjusted net earnings, cash flow, return on equity, return on capital, the

combined ratio, net premium growth and/or net investment performance."  (Doc. 12-2,

23.)

Plaintiff takes issue with this type of "menu" plan.  (Doc. 7, 11.)  In doing so, he

points to § 1.162-27(e)(4)(ix) (Example 3), which states that "[i]n the proxy statement

issued to shareholders, Corporation Y need not disclose to shareholders the specific

targets that are set by the compensation committee.  However, Corporation Y must

disclose that bonuses are paid on the basis of earnings per share, reductions in costs,

and increases in sales of specified divisions."  26 C.F.R. § 1.162-27(e)(4)(ix) (Example

3) (emphasis added).  Plaintiff argues that "the 11 categories which Cincinnati

Financial's Compensation Committee may use here are so broad as to not constitute

any shareholder-approved performance criteria." (Doc. 7, 12.)  First, the Court sees

nothing in this example leading to that conclusion.  Second, Plaintiff appears to focus on

the fact that the 2006 Stock Plan gives no indication of whether performance conditions

need to be increased or decreased.  The Court agrees with Defendants here—this

argument is meritless.

The Treasury Regulations do not require increases or decreases to be stated

with the specificity that Plaintiff assumes.  As the Regulations state:

> Performance goals can be based on one or more business
> criteria that apply to the individual, a business unit, or the
> corporation as a whole.  Such business criteria could
> include, for example, stock price, market share, sales,
> earnings per share, return on equity, or costs.  *A
> performance goal need not, however, be based upon an
> increase or positive result under a business criterion* and
> could include, for example, maintaining the status quo or
> limiting economic losses (measured, in each case, by
> reference to a specific business criterion).

26 C.F.R. § 1.162-27(e)(2)(i) (emphasis added).  Therefore, Proposal 5 in the 2011

Proxy is sufficient under Treasury Regulation 1.162-27(e)(4).

Additionally, Plaintiff argues that the 2006 Stock Plan is not specific enough for

shareholders to determine the maximum amount of compensation that could be paid to

any employee during a specified period.  (Doc. 7, 9.)  As the regulations state, "[i]f the

terms of the performance goal do not provide for a maximum dollar amount, the

disclosure must include the formula under which the compensation would be

calculated."  26 C.F.R. § 1.162-27(e)(4)(iv).  However, at the Hearing, Plaintiff admitted

that the plan listed this maximum compensation.  The 2011 Proxy is clear on this point.

(Doc. 12-2, 32, 34.)  Again, the 2006 Stock Plan meets § 1.162-27(e)(4)'s requirements,

and the 2011 Proxy is not false or misleading.

12

### ii.    Relevant Caselaw

This result lines up with a particularly relevant and recent case cited by Defendants.  In *Seinfeld v. O'Connor*, --- F. Supp. 2d ---, 2011 WL 1193212, 2011 U.S. Dist. Lexis 33595 (D. Del. Mar. 30, 2011), a shareholder brought an action against a corporation and its directors alleging that its proxy statement contained materially false or misleading statements or omissions regarding an executive incentive plan.  *Id.* at *1. More specifically, the *Seinfeld v. O'Connor* case dealt with the same issue as here: whether the proxy statement was misleading by virtue of the fact that the compensation plan did not qualify for a tax deduction under IRC § 162(m).  *Id.* at *3.  The plan at issue was a "menu plan" similar to the one put forth by Cincinnati Financial.  *Id.* at *8.  The Delaware District Court pointed out that Example 3 of the Regulation (the same as quoted above) describes a menu-type plan "in which a compensation committee chooses from among listed business criteria."  *Id.* (*citing* 26 C.F.R. § 1.162-27(e)(4)(ix). As this Court has concluded, the *Seinfeld v. O'Connor* court held that the plan in question fit within the guidelines provided in Example 3.  *Id.  Seinfeld v. O'Connor* supports this Court's holding.

For its part, Plaintiff cites two cases in support: *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003) and *Seinfeld v. Barrett*, No. Civ. A. 05-298-JJF, 2006 U.S. Dist. Lexis 14827, 2006 WL 890909 (D. Del. Mar. 31, 2006).  Plaintiff first argues that "*Shaev v. Saper* upheld § 14(a) claims alleging that defendants misrepresented the tax deductibility of compensation under § 162(m), where the proxy falsely claimed to shareholders that a plan was compliant with 162(m) when it was not."  (Doc. 7, 12.)

In *Shaev*, a shareholder brought suit alleging that a proxy statement made false

13

and misleading statements of material fact regarding the tax deductibility of an executive compensation plan. *Id.* at 375–77. However, *Shaev* never reached the issue of the compensation plan's specificity, as Plaintiff argues here. Rather, *Shaev* was decided, in part, on the questions of whether tax deductibility was precluded because the plan was established too late, because there was discretion to increase the amount of the bonus late in the performance period, and because the board threatened to pay a bonus even if the shareholders voted against it. *Id.* at 380–81. Each of these points led the *Shaev* court to conclude that the compensation "would not have been deductible under the Treasury Regulations, and the alleged false statement in the proxy statement is actionable." *Id.* at 381. The *Shaev* plaintiff was successful on each of these points, but they are unrelated to the issue here, which questions the compensation plan's specificity. *See id.*

*Shaev* did consider the specific "business criteria" in Treasury Regulation 1.162-27(e)(4)(iii)—the main issue the parties argue over here (as discussed above)— however, *Shaev* only approached it from the perspective that the proxy statement in that case was deficient because it failed to include a particular supplement that was required to satisfy Rule 14a-9's disclosure obligation. *Id.* at 381. In other words, the proxy statement in *Shaev* was deficient because it failed to include information about earlier compensation plans that the current plan was based on, not because of tax deductibility under § 162(m), as Plaintiff alleges here. *See id.* at 381, 383–84 ("[A] proxy soliciting shareholders' approval of a proposed executive incentive compensation plan, which refers to an existing incentive plan, must disclose the material features of both plans. It must also state, if determinable, the amount of the increased benefits and performance

goals under the proposed plan.")  Proposal 5 and the 2011 Proxy at issue here does not suffer from the same deficiency.

The Third Circuit in *Shaev* further stated that "under 26 C.F.R. § 1.162-27(e)(4)(iii)(A), the specific business criteria upon which bonuses are contingent need not be disclosed in a proxy statement.  However, the material terms of the incentive plan and general performance goals on which the executive's compensation is based must, at a minimum, be disclosed."  *Id.* at 383.  It also quoted the legislative history of IRC § 162(m) as follows:

> It is intended that not all the details of a plan (or agreement) need be disclosed in all cases.  In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary should take into account the SEC rules regarding disclosure.  To the extent consistent with those rules, however, disclosure should be as specific as possible.  It is expected that shareholders will, at a minimum, be made aware of the general performance goals on which the executive's compensation is based and the maximum amount that could be paid to the executive if such performance goals were met.

H.R. Conf. Rep. No. 103-213, at 588 (available at 1993 WL 302291).  Once again, as analyzed above, Cincinnati Financial's 2011 Proxy meets these requirements.  Thus, even where *Shaev* does touch on the question at issue in the present case, it does not support Plaintiff's arguments.  *Shaev* does nothing to help demonstrate Plaintiff's likelihood of success.

The second case Plaintiff relies on is *Seinfeld v. Barrett*, No. Civ. A. 05-298-JJF, 2006 U.S. Dist. Lexis 14827, 2006 WL 890909 (D. Del. Mar. 31, 2006).  Plaintiff argues that this case upheld a Section 14(a) claim regarding § 162(m) compensation where there was a false or misleading statement promising a tax deduction for an executive

compensation plan. (Doc. 7, 12.) But *Seinfeld v. Barrett* is inapplicable to the facts presented here. The proxy statement in that case declared that executive compensation would be paid regardless of whether the shareholders approved it. 2006 WL 890909, at *1, 5. This fact alone made the compensation non-tax-deductible under § 162(m) because Treasury Regulation § 1.162-27(e)(4) states that "[t]he requirements of this paragraph (e)(4) are not satisfied if the compensation would be paid regardless of whether the material terms are approved by shareholders." 26 C.F.R. § 1.162-27(e)(4)(i). This issue has no relation to the case at bar. As with *Shaev*, *Seinfeld v. Barrett* does nothing to demonstrate Plaintiff's likelihood of success.

In total, Plaintiff has not shown that the 2011 Proxy fails to meet the requirements of IRC § 162(m) or Treasury Regulation § 1.162-27. Additionally, the cases he relies on do not support his arguments. Plaintiff has therefore failed to carry his burden of showing a likelihood of success on the merits.

### 2. Irreparable Harm

"After determining that a plaintiff has demonstrated a substantial likelihood of success on the merits of his underlying claim, the second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (*citing Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "'A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.'" *Id.* (*quoting Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). "'[A]n injury is not fully compensable by money damages if

16

the nature of the plaintiff's loss would make the damages difficult to calculate.'" *Id.* (*quoting Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992)).

Plaintiff argues that if the shareholder vote on Proposal 5 of the 2011 Proxy is allowed to proceed, Cincinnati Financial's shareholders "will suffer irreparable harm to their corporate suffrage rights," and, "Cincinnati Financial will stand to lose millions of dollars in § 162(m) deductions . . . ." (Doc. 7, 16.)  Defendant counters that any alleged harm here is "entirely speculative."  (Doc. 12, 16.)  This Court agrees with Defendant, in part, because there is no indication that Proposal 5 is non-tax-deductible under § 162(m) as Plaintiff contends.  Rather, Plaintiff has not shown a likelihood of success on this point, therefore, there is no likelihood of harm either.[4]

More importantly, any harm to Plaintiff is speculative because Cincinnati Financial has never paid out any compensation under the 2006 Stock Plan.  (Doc. 12, 3.)  Plaintiff does not deny this fact, and he points to nothing to indicate that Cincinnati Financial will buck this trend and pay out a bonus under the 2006 Stock Plan any time in the future.  As Defendant argues, "[a] long series of hypothetical events would have to occur before the IRS would ever address the tax deductibility of an award under the 2006 Stock Plan."  (Doc. 12, 17.)  The first such hypothetical event is that Cincinnati Financial would have to make an award under the 2006 Stock Plan, and that is something that has never occurred before.  (Doc. 12, 3.)  "To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated."  *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  Here, Plaintiff's harm is speculative.  Thus, Plaintiff has failed to

---

[4] This conclusion applies to Plaintiff's derivative claim as well as to his direct claim.  He has failed to show irreparable harm based on either claim.

demonstrate that he "will suffer irreparable injury without the injunction." *Certified Restoration Dry Cleaning*, 511 F.3d at 550.

### 3.     Harm to Others and the Public Interest

The third factor to consider here is whether the issuance of an injunction "will cause substantial harm to others." *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009). The final factor is "whether the injunction advances the public interest." *Id.* Because the first two factors weigh against granting the preliminary injunction, the Court declines to specifically address these two factors. "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)).

## III.  Conclusion

First, Plaintiff's motion for a preliminary injunction on his derivative claim is DENIED because he has failed to comply with the demand procedure required for such derivative claims.  Second, Plaintiff's motion for a preliminary injunction on his direct claim is DENIED because the 2006 Stock Plan meets § 1.162-27(e)(4)'s requirements, and the 2011 Proxy is not false or misleading.  Both of these results dictate that Plaintiff has failed to show a likelihood of success on the merits or that he will suffer irreparable harm without the requested injunction.  Thus, based on the foregoing, it is hereby ORDERED that Plaintiff Robert W. Black's Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (Doc. 7) is **DENIED**.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
United States District Judge